UNITED STATES of America, Plaintiff-Appellee,

v.

Darrell Kenneth BASS, Wilbur Edward Hand and Hugh Field, Defendants-Appellants.

No. 76–3087.

United States Court of Appeals, Fifth Circuit.

May 4, 1977.

Rehearing Denied June 6, 1977.

Neal R. Sonnett, Marc Cooper, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., C. Wesley G. Currier, Robert Lance Andrews, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The sole issue in this appeal is whether the trial court erred in failing to suppress as evidence marijuana seized by law enforcement officers without a warrant. Our approach to the problem is to determine whether, under the peculiar facts of this case, probable cause existed to justify the search and seizure.[1] Our review of the record convinces us that in this instance it did, and we therefore affirm.

I

Sometime prior to December 23, 1975, the Drug Enforcement Agency (DEA) received a tip that marijuana was to be smuggled into this country somewhere along the Florida coast. The tip was followed up by the DEA as they began to monitor the comings and goings of a certain van. At about eleven o'clock on the night of the seizure, the van was followed to the Florida East Coast Fish House, located in the town of Marathon in the Florida Keys. The van entered the private premises of this commercial fish house and then, several minutes later, left again. The fish house was dark, there being no business activity at the time.

The DEA agent in charge, noting that the dock area behind the fish house would provide a good place for bringing in contraband, decided to continue surveillance of the fish house. It was soon observed that two men were loitering about the dock area. One agent was sent to a surveillance point the other side of the channel, and about 4:00 A.M. he saw two motor boats coming down the channel with their running lights off. He reported one boat to be riding low in the water. The boats moored at the fish house dock, and then the men who had been waiting there for several hours joined those just arriving in unloading what appeared to be boxes or bales. Only the agent across the river had a clear view of this operation, but he was too far away to see what was in the boxes.

At this point, based on the reports of the agent surveilling the activity, the agent in charge ordered his men to close in. About twenty federal, state and local officers scaled the fence surrounding the fish house and ran toward the dock. One of the defendants froze and was apprehended. The three others, the appellants in this case, were in one of the boats, and when they spotted the officers, they took off at high speed down the channel. The vessel was seized some time later in the open seas and marijuana debris was found in it.

At the dock, eighty bags of marijuana in plain view were seized. A nearby rental van was also searched, and thirty bags of marijuana were found there. The total weight of the contraband was almost 4500 lbs.

The above facts were presented to the trial court at an evidentiary hearing on a motion to suppress. The court denied the motion, finding that, first, probable cause and exigent circumstances supported the warrantless search and seizure; second, the search and seizure could be supported as a border search; and, third, seizure of the contraband was incident to a lawful arrest. As we affirm the district court's first finding, we need not consider the alternative holdings.

II

The appellants would have us analyze this case in terms of whether the tip given

---

1. The appellants do not contest that exigent circumstances existed, eliminating the requirement of obtaining a warrant.

to the DEA was legally sufficient under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). They claim that the tip, concededly lacking reliability as given, was not adequately corroborated to give the agents probable cause. *See generally United States v. Tuley*, 546 F.2d 1264 (5th Cir. 1977). We decline to engage in such analysis, however. The agents followed a van which led them to a deserted commercial establishment with access to the Atlantic Ocean. The agent in charge then decided to continue surveillance of the premises after the van had left. The critical fact is that, to this point, no intrusion on any property or privacy interest had been occasioned. The DEA can stake out any van and any fish house it has a mind to, whether prompted by a tip or not.

The key question, then, is whether the activity noticed by the agents during their surveillance of the premises was suspicious enough to furnish probable cause to believe that criminal conduct was afoot. As previously stated, we conclude that the district court correctly determined that probable cause did exist. We rely on the following facts: (1) The fish house was closed for business during the period of time in question. No lights were on inside the building, nor was the dock area lighted, and the premises were fenced and locked. (2) Two men were observed loitering near the dock from 11:00 P.M. until 4:00 A.M. the next morning. (3) No boats had been seen in the channel for several hours when, at about 4:00 A.M., two boats without running lights motored slowly into view. For a vessel to travel at night without running lights is in and of itself a violation of 33 U.S.C. § 178 (1970) and 46 *id.* § 526b. (4) One of the

boats was riding low in the water. (5) The channel provides access to international waters. (6) The boats moored at the dock of the fish house. Those on the boats were then joined by those previously loitering at the dock in unloading cargo, which appeared to be boxed or baled.

In light of such unusual, clandestine activity, we have no difficulty concluding that the agents had probable cause to suspect criminal conduct on the part of the appellants.[2] Their search and subsequent seizure of the contraband was therefore reasonable under the fourth amendment. The judgment of the district court is

AFFIRMED.

BROWN, Chief Judge, concurring.

I concur fully in the result and in the opinion. I would add another basis. With no showing and none reasonably inferable from this record, that the defendants and their henchmen had any right to occupancy of a closed commercial fish house, they could not assert any expectancy of privacy. They are not in a position to contend that the Government agents were trespassers—trespassers perhaps as to the fish house concern, but certainly not trespassers as to them. Without probable cause at the moment of attack, the Government agents had as much right to be on the premises as the defendants. Once on the premises there was in the plainest of view, 80 boxes of marijuana and more in the vessel then being unloaded. There was no need to suspect that a crime was being committed. They could see that it actually was.

---

2. Counsel for appellants tries to put an innocent interpretation on the facts presented to the district court, but we find his efforts unpersuasive. He argues that the running lights on the boats could simply have malfunctioned. It would be quite a coincidence if *all* the running lights of two vessels traveling together were off by accident rather than by design. Counsel also argues that, since fishing is done at night, the boats could simply have been unloading

their catch. After all, the boxes unloaded did resemble lobster traps. Moreover, the men loitering on the dock for at least five hours could have been waiting to help them unload. What undercuts any vitality to this argument, however, is the fact that the fish house was obviously closed during the entire operation. Whatever activity occurred at this 4:00 A.M. rendezvous was obviously not normal business activity.