**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Anthony JOHNSTONE, Frank McRee Smith, Santiago Mendoza and Maria Yolanda Serrano, Defendants-Appellants.**

**No. 77–5585.**

United States Court of Appeals,
Fifth Circuit.

June 13, 1978.

See also, 5 Cir., 554 F.2d 758.

Warren Burnett, Odessa, Tex., for Johnstone.

William C. Marchiondo, Scott McCarty, Albuquerque, N. M., Robert R. Harris, El Paso, Tex., for Mendoza and Serrano.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., Rebecca D. Westfall, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

Johnstone, Smith, Mendoza, and Serrano were charged, in a two-count indictment, with conspiracy to possess and distribute marijuana and with possession of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. At the hearing on the motions to suppress the evidence, they agreed to waive jury trial and stipulated that the substance seized by the officers was 307 pounds of marijuana. In response, the government dropped the conspiracy count. The district court denied the motions to suppress, and

found each defendant guilty of possession of marijuana. We must reverse the convictions, because there was insufficient probable cause to justify the search which revealed the evidence.

According to his testimony at the preliminary hearing and at the hearing on the motions to suppress, special agent Robinson of the Drug Enforcement Administration received a midnight telephone call from an informant who identified himself but was unknown to Robinson. Robinson was told that there were some people staying in rooms 461 and 462 at the Rodeway Inn, that they were paying approximately $40 a day in cash per room, that they had checked in together, and that they were not allowing the maids to enter the rooms to clean them. Apparently the caller was suspicious that a drug deal was in the making. Later that night, around 4 a. m. on January 30, 1977, Robinson and another agent went to the El Paso Rodeway Inn and checked the register. One room was registered in the name "Frank Smith", which, in the circumstances, aroused Officer Robinson's suspicions; the other was rented to an individual named Lalonde or Yalonde from Pennsylvania. Surveillance was initiated at the hotel.

At 11:30 a. m. on January 30, a woman later identified as Frank Smith's wife, Sidney Smith, drove one Joseph Lalonde to the International Airport in El Paso. Lalonde boarded a Continental airliner to Pennsylvania. Sidney Smith returned to the Rodeway Inn. Later that day Sidney returned to the airport with Frank Smith. Frank entered the airport, purchased an envelope and some paper, entered the men's restroom, and addressed the envelope. The letter was sent by air freight to Albuquerque, New Mexico. Frank and Sidney then visited Frank's parents in El Paso. The parents, Frank and Sidney, and their child went to a restaurant for lunch. On their way back to the motel, the Smiths and their child stopped for a few minutes at the residence of appellant Johnstone's parents.

On the next day, February 1, around noon, Frank Smith was observed renting a truck with an 18 foot enclosed van. He and his wife drove the truck and their Chevrolet automobile to Frank's parents' house, where he transferred from the automobile to the truck some furniture purchased the previous day at an auction. They returned to the Rodeway Inn in the car and the rented truck. A couple of hours later appellant Johnstone, driving a rented Ford automobile, arrived at the motel and stayed approximately forty-five minutes in Frank Smith's room. After leaving the Rodeway Inn, Johnstone stopped briefly at his parents' house and then drove to Ornamental Iron Works, a business operated by appellant Mendoza, who was allegedly suspected of drug trafficking. Johnstone returned to the Rodeway Inn and met Smith in the parking lot. Together they left in the rented truck. They stopped briefly at a convenience store, then drove to a residence on Mazatlan Street. Johnstone got out of the truck and talked with Mendoza in the front yard. Johnstone and Mendoza then carried approximately twenty-five tape-sealed boxes from the house and loaded them into the back of the truck. When they had finished loading and had closed the truck door, they were approached by the agents. The truck was searched, one box was opened and found to contain marijuana, and Smith, Johnstone, and Mendoza were placed under arrest.

Appellant Serrano was arrested in the yard behind the house on Mazatlan Street. Following her arrest and after being advised of her rights, she admitted that she knew what was in the boxes. Later that afternoon, Sidney Smith was arrested at an antique store. The Magistrate determined at the preliminary hearing that there was no probable cause for the arrest of Sidney Smith, and she was discharged from further responsibility under the complaint.

■ Searches undertaken without a valid search warrant are *per se* unreasonable unless shown to fit within one of the recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564, 588 (1971). The government contends that the quantum of information

known to the agents at the time of the search was sufficient to constitute probable cause, in light of the "less stringent warrant requirements [that] have been applied to vehicles." *Cardwell v. Lewis,* 417 U.S. 583, 589–90, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325, 334 (1974). The potential mobility of the truck is alleged to provide the element of exigency requiring prompt police action.[1]

We notice initially that the Supreme Court has expressed a strong preference for the interposition of a neutral and detached magistrate between the citizen and the government's agent,[2] and that this preference has resulted in a subtle difference between the probable cause required when there is no warrant and that required when there is. According to *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684, 687 (1965), "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." This court has stated that "the standards applicable to the factual basis supporting probable cause for a warrantless arrest and search are at least as stringent as those applied to a search warrant, *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and may even be more stringent, *see, e. g., United States v. Squella-Avendano,* 447 F.2d 575, 579 (5th Cir. 1971)." *United States v. Anderson,* 500 F.2d 1311, 1315 n.8 (5th Cir. 1974).

■ We must determine whether the facts known to the DEA agents would "warrant a man of prudence and caution in believing that the offense has been committed." *Stacey v. Emery,* 97 U.S. 642, 645, 24 L.Ed. 1035, 1036 (1878). The tip alone cannot support a finding of probable cause. The informant was unknown to the agent with whom he spoke and the activities he described were perfectly consistent with the behavior of innocent travelers. There were no underlying circumstances tending to demonstrate that the informant's conclusion of criminality was reliably made, or tending to establish the informant's credibility. *See Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723, 729 (1964); *Spinelli v. United States,* 393 U.S. 410, 415–17, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637, 643–44 (1969).

■ The question then is whether the tip was sufficiently corroborated. We must decide whether "the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration." *Spinelli v. United States, supra.* This is a decision which must be based on the facts in each case.

■ The agents' surveillance revealed to them the following allegedly suspicious details: Frank Smith used addresses in three cities, Albuquerque, El Paso, and Santa Fe; Frank Smith sent a letter air freight to Albuquerque from the El Paso airport; Smith rented a truck with a load capacity in excess of that needed to carry the furniture contained in his automobile; Robert Johnstone drove a rented Ford automobile, although he owned a Ford automobile; Johnstone, in the company of a man (Mendoza) reported to have connections with drug traffic (neither the source nor the reliability of this information was ever shown), loaded tape-sealed cardboard boxes into Smith's rented truck. While these observations may create suspicion, particularly among agents "engaged in the often competitive

---

1. In view of our disposition of this case, we do not decide whether exigent circumstances were present, nor do we decide the applicability of *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), to this set of facts.

2. "An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.' *United States v. Lefkowitz,* 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 882, 82 A.L.R. 775. The reasons for this rule go to the foundations of the Fourth Amendment." *Aguilar v. Texas,* 378 U.S. 108, 110–111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 726 (1964). *See also Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436, 440 (1948).

enterprise of ferreting out crime", *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948), we believe they are not sufficient either to establish probable cause for a warrantless search or to provide meaningful corroboration of the informant's report. Beginning with agent Robinson's confirmation that a Frank Smith was indeed registered in room 462 at the Rodeway Inn, the details unearthed by the agents contained no suggestion of criminal conduct when taken by themselves. Even combined with the informant's speculation [3] that Smith was in town for a drug deal, the innocuous details do not rise above the level of mere suspicion.

This case differs from *United States v. Tuley,* 546 F.2d 1264 (5th Cir. 1977), in several respects. In *Tuley,* the tip was from a "previously reliable", 546 F.2d at 1265, source, and disclosed the suspects' projected manner of transportation, as well as their destination. Independent surveillance corroborated the details of the transaction, *e. g.,* that the marijuana would be transported from the Rio Grande Valley. In this case, on the other hand, the informant's reliability was never established and he was unknown to agent Robinson; all that appears from the record is that he had at one time been a Customs inspector at the International Bridge. The informant had no idea where the contraband was going to be obtained nor where it would be taken, nor any information concerning the type of vehicle to be used. The activities observed by and reported to the agents here too closely resemble the "suspicious" nature of the registration in the name of Frank Smith; they simply never rise to a level suggestive of criminal activity to a reasonable and cautious person. For this reason *United States v. Bass,* 551 F.2d 962 (5th Cir. 1977), where bags of marijuana were unloaded in plain view at 4:00 a. m. at the dock of a fish house closed for the night, is also inapposite.

Probable cause decisions made by courts of appeals do not form a totally harmonious pattern—in part because courts only review police practices that become the subjects of lawsuits, so that the canon of rules is seldom clear-cut and never comprehensive.[4] In a case such as this, where details innocent in themselves are accumulated to uphold a warrantless search, we have no hesitation in finding a violation of the Fourth Amendment. Mere suspicion that a search will reveal contraband does not constitute probable cause.[5]

REVERSED and REMANDED.

GODBOLD, Circuit Judge, specially concurring:

I concur but must note that I am not able to agree with the characterizations given to the circumstances of *U.S. v. Tuley,* 546 F.2d 1264 (CA5, 1976), for reasons given in my dissent in that case.

---

3. Agent Nattinger testified during cross examination at the preliminary hearing as follows:

> Q. And as far as you know and can now tell His Honor, the informant conveyed only his, and for want of a better way to put it, naked suspicion that these people might be going to do a dope deal? That is a fair statement, isn't it?
> A. Well, I wouldn't use those words, but it accurately, I guess—
> Q. It is accurate?
> A. Yes, it is fairly accurate.

(1st Supp. Record, Vol. 1, at 75).

4. *See* Amsterdam, The Supreme Court and the Rights of Suspects in Criminal Cases, 45 N.Y. U.L.Rev. 785 (1970), excerpted in Y. Kamisar, W. LaFave, and J. Israel, Basic Criminal Procedure (4th ed.1974) 152–162.

5. The fact that the agents' suspicions were verified by a search of one of the boxes in the truck does not, of course, satisfy the requirements of the Fourth Amendment, as interpreted by the Supreme Court. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 453 (1963).