9 P.3d 909 (2000)
Gene PETERS and Church of the Disciples of the Soil, Appellants,
v.
Michael VINATIERI and Lewis County, a Political Subdivision of the State of Washington, Respondents.
No. 24085-8-II.
Court of Appeals of Washington, Division 2.
September 22, 2000.
*911 Richard Francis Dejean, Sumner, for Appellants.
Guy M. Bogdanovich, Law, Lyman, Daniel, Kamerer & Bogdanovich, Olympia, for Respondents.
*910 ARMSTRONG, C.J.
To document the possibility of illegal sewer hookups, water conditions, and a public swimming pool at the Riffe Lake Recreation RV Park, two agents of the Lewis County Health Department drove onto an access road owned by the Church of the Disciples of the Soil and videotaped two RV hookups. Gene Peters, who owns and operates the RV park, lives just off the access road. Peters stopped the agents and told them they were trespassing on private property. Peters had earlier warned the Department about trespassing on his property and had told it to contact him before inspecting his property. As a result of the incident, Peters sued the Department and its director for damages under 42 U.S.C. § 1983 for violating his fourth amendment rights and under 42 U.S.C § 1985 for conspiracy to deprive him of equal protection of the laws. He also brought a claim for damages under article 1, section 7 of the state constitution. In addition, he brought common law claims of trespass and invasion of privacy. The trial court granted summary judgment for the Department, and Peters appeals. We affirm.

FACTS
On January 10, 1996, Pat Waslawski and Chris Cooper, employees of the Lewis County Public Services Department in the Environmental Health Division, went to the Riffe Lake Recreation RV Park to "document conditions by photo and/or video camera so that the case file[] ... could be updated and, if necessary, turned over to the Prosecutor's Office for review and possible further action." Waslawski was a supervisor for land use, water, and lab programs. Cooper was the solid waste coordinator. They were sent there by Michael Vinatieri, who was then the Director of the Environmental Health Division. The agents believed that Peters had not obtained a permit to operate the RV park.
Peters has had a long and strained relationship with the Department. In 1981, the Department wrote Peters asking for his cooperation in inspecting his "community" water supply that served trailers at "Mr. Jack Redmon's Grocery Store." Peters wrote back that he did not know of a store by that name and would not cooperate with the Department. He added, "The last time you were on the property here at Glenoma you were trespassing. The place is posted. I suggest you take the time to read the signs. Entry by a Government official without the proper authority is a misdemeanor."
*912 The Department then advised Peters of the regulations, again asked for his cooperation, and said the Department would be required to pursue legal action if he failed to provide the requested information. He was also told that "the expansion of the mobile home park of Mr. Jim Redmon and any food service in the grocery store would be limited and/or discontinued." Shortly thereafter, the Department's attorney asked Peters for a voluntary inspection of the well and told him that otherwise the County would ask for a court order. In 1982, the Department's attorney wrote an internal letter stating, "Mr. Peters is taking a very strong stance against any County involvement in the inspection of his public water supply. I anticipate that this case may require some further action by Lewis County Superior Court in order to enable the environmental staff to enter the property and inspect the quality of the water." The letter also indicated that a court order might be required. A later note in July 1982 suggests that the attorney was instructed to "pursue immediate court action" regarding the water supply. It is unclear from the record how this matter was resolved.
Four years later on June 12, 1986, a newspaper reported the grand opening of Riffe Lake Recreation. The report stated:
Gene and Jeannie Peters are opening a recreational vehicle (RV) park and miniature golf course. The new facility is next to the Glenoma Post Office where the Peters are developing a 40-acre tract that includes two miles of nature trails and a year-around [sic] creek with fish in it. The RV park has 15 hookups for water, sewer, and electricity with access to a heated swimming pool, showers and restrooms.
On June 27, 1986, the Department's attorney wrote Peters that the County had no record of the necessary permits to construct a septic system, no records showing an adequate water supply, and no record of the inspection report required for a public swimming pool. Peters responded that he would cooperate but he asked that he "be notified of their coming in advance, so I may aid them in their inspection. If no such notification is sent, they will be instructed to leave." He also asked for copies of all regulations, which were sent by the Department on July 14, 1986. In June 1987, the Department again wrote Peters about violations and advised that it required compliance because Peters was "again advertising [his] facilities to the public."
In September 1987, the Department told Peters that it could not certify his well. The Department reminded Peters that it had received neither a permit application for sewage disposal nor plans or specifications for the swimming pool. A week later, Peters sent a sketch of his swimming pool. But he disagreed with the Department's decision to inspect his water supply. A later letter from the Department's attorney to the Director stated that the Director would make arrangements with a representative of DSHS to meet with Peters to discuss compliance. On June 23, 1988, the Department told Peters that DSHS needed to approve his public swimming pool and that, thereafter, the Department would conduct annual inspections. There is no other documentation in the record concerning the next eight years and whether Riffe Lake Recreation had come into compliance.
On the afternoon of January 10, 1996, Waslawski and Cooper pulled off of State Route 12, across from the RV park. Waslawski believed that Peters did not have an RV park permit. After seeing RV's parked at the site, they decided to document the conditions.
The agents were in a clearly marked Lewis County vehicle. They believed the access road was open to the public. A large sign posted on the access road facing SR 12 advertised:
RIFFE LAKE RECREATION
R.V. PARK
FULL HOOKUPS
BOONDOCKERS
TENTERS
SHOWERS PHONE
POST OFFICE
DAY-WEEK-MONTH
ESPRESSO MORE
POP & SNACKS ICE FOOD *913 Several businesses were served by the access road and the agents found no restriction to access, such as no trespassing signs or locked gates.
Waslawski and Cooper drove straight down the access road, past an espresso stand, to the travel trailer parked closest to SR 12. Waslawski videotaped a sewer pipe, water hose, and power cords running from the trailer to the hookup at space number 8.
The agents then drove a short distance forward on the access road near space number 10. According to Peters, they drove to a point immediately east of his residence. The agents heard a shout and a whistle and saw Peters walking toward them from a corner of the residence, which displayed an "office" sign.[1] When they saw Peters, they pulled the vehicle forward onto the gravel parking pad in front of space number 10 and turned the car off.
Peters disagrees with the Department's version of events, stating initially that there is no sign inviting the public onto his property. The road on which the agents drove is "clearly a private road and it is maintained entirely by myself." A yellow and black "No Trespassing" sign is posted on the property, and the agents had to drive past the sign to enter his property. The public access serves only the post office and fire department.
Peters also maintains that, although the espresso stand is located along the portion of the access road on which the agents drove, the patrons use a semi-circular driveway and "[t]here is no access to the public, or anyone other than [Peters'] own personal licensees or invitees, beyond, and South of the Espresso stand." A sign on the corner of a building immediately behind and to the left of the espresso stand reads, "for RV customers only." Peters admits that at one time he was going to have the swimming pool, which is located on the access road, opened to the public. But he did not proceed with final approval, and the pool and his private access road were never opened to the public.
Jeannie Layman, who lives with Peters, said the agents drove past the public access that leads to the post office and fire department and drove directly onto private property. One of the agents walked with a camera to the RV's. Layman added, "It clearly appeared that she was engaging in further video taping activities. She walked off the road and onto the property itself."

ANALYSIS
A. Did the Department violate Peters' fourth amendment rights when they drove onto the RV park's access road and videotaped the RV hookups?
Under 42 U.S.C. § 1983, Peters seeks damages from the Department for violating his fourth amendment rights.[2] Although there are disputed issues of material fact as *914 to what the access road serves, we hold that Peters had no reasonable expectation of privacy in the area videotaped by the county agents. Thus, the agents did not illegally search the area under the fourth amendment.[3]
Peters first contends that the Department was required to obtain a warrant before inspecting his property. He cites our recent decision in Thurston County Rental Owners Ass'n v. Thurston County, 85 Wash.App. 171, 931 P.2d 208 (1997). In Thurston County, a homeowners' association argued that the on-site septic tank inspections required by ordinance constituted warrantless searches under the fourth amendment. We concluded that "[i]nspections for health, safety, and other violations of municipal codes must be conducted pursuant to a warrant, or fall within one of the narrowly drawn exceptions to the warrant requirement." Thurston County, 85 Wash.App. at 183, 931 P.2d 208 (citing Camara v. Municipal Court of San Francisco, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)).
Peters' reliance on Thurston County is misplaced. The Department does not contend that it can conduct an on-site sewer inspection without a warrant.[4] Instead, the Department argues that its visual "observation" of the sewer hookups is not a "search" under the fourth amendment.
The Department's argument is based on the "open view" doctrine. Under this doctrine, no search occurs "When a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used.'" State v. Bobic, 140 Wash.2d 250, 259, 996 P.2d 610 (2000) (quoting State v. Rose, 128 Wash.2d 388, 392, 909 P.2d 280 (1996)). For example, the United States Supreme Court held that a health department inspector did not violate the fourth amendment when he entered the outdoor premises of the Western Alfalfa Corporation and observed smoke plumes from the plant's chimneys. Air Pollution Variance Bd. of Colorado v. Western Alfalfa Corp., 416 U.S. 861, 862-65, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974). The court said, "The field inspector was on respondent's property but we are not advised that he was on premises from which the public was excluded." Air Pollution Variance Bd., 416 U.S. at 865, 94 S.Ct. 2114. The court also noted that the inspector observed what anyone near the plant could see in the sky. Air Pollution Variance Bd., 416 U.S. at 865, 94 S.Ct. 2114. Further, recording by photograph or videotape an observation that can be seen by the naked eye "is clearly no search if the observation itself was not" a search. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.2(c), at 345 n. 99 (2d ed.1987); c.f., State v. Manly, 85 Wash.2d 120, 124, 530 P.2d 306 (1975) (binoculars may be used to confirm what can be seen with the naked eye); State v. Ludvik, 40 Wash.App. 257, 264 n. 1, 698 P.2d 1064 (1985).
The issue here is whether the agents saw the sewer hookups from a lawful vantage point. The fourth amendment protects against governmental intrusion upon a legitimate expectation of privacy. Bobic, 140 Wash.2d at 258, 996 P.2d 610 (citing Katz v. United States, 389 U.S. 347, 351-52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). A legitimate expectation of privacy has both a subjective and an objective requirement. A person must demonstrate an actual subjective expectation of privacy by seeking to preserve something as private, and society must recognize that expectation as reasonable. Bond v. United States, 529 U.S. 334, 120 S.Ct. 1462, 1465, 146 L.Ed.2d 365 (2000). As the Supreme Court said in Katz, 389 U.S. at 351, 88 S.Ct. 507 (citations omitted):

*915 The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.
Here, Peters clearly had a subjective expectation of privacy, in the area from which the agents videotaped the RV's, as evidenced by his letters to the Department and the no trespassing sign posted at the entrance to his property. The question is whether society recognizes this expectation as reasonable, which is a question of law. See United States v. Nerber, 222 F.3d 597 at 600 (9th Cir., 2000). We conclude that Peters' expectation of privacy was not objectively reasonable.
Peters argues that, because he posted a no trespassing sign on the property, the access road leading to his residence is private. As we recognized in State v. Gave, 77 Wash.App. 333, 338, 890 P.2d 1088 (1995), the existence of a no trespassing sign is not dispositive. Although Peters posted a no trespassing sign near the entrance to his property, he placed an even larger billboard on his property advertising commercial services. The billboard faces SR 12 and advertises an RV park with full hookups, showers, a phone, a post office, espresso, and food. Peters contends that the access road beyond the espresso stand was private because he posted a sign reading "for RV customers only." These RV customers are members of the public who are invited onto Peters' property for the purpose of renting RV sites. An "office" sign hangs on Peters' "private" residence. Because the access road is open to the public, Peters' expectation of privacy is not objectively reasonable.
This conclusion is supported by the decision in United States v. Edmonds, 611 F.2d 1386 (5th Cir.1980). There, the court found no reasonable expectation of privacy where the officers observed marijuana on a dock used by a commercial fishing business. Although a "`private roadno trespassing'" sign was posted on the road leading to the dock, evidence also established that the public was welcome to use and did use the dock. Edmonds, 611 F.2d at 1387-88.
But Peters also argues that he has a reasonable expectation of privacy because he wrote two letters in which he expressly prohibited the Department from entering his property. The first letter was written in 1981, before he opened Riffe Lake Recreation RV Park. At that time, he denied any knowledge of a "Mr. Jack Redmon's grocery store" on the property and denied having a community water supply. He would not allow the Department to inspect his water supply and told the Department it had trespassed on his property. Once Peters opened the RV park to the public in 1986, he had no reasonable expectation of privacy in the areas of his property on which he invited the general public for commercial purposes.
However, Peters wrote a second letter after the opening of the RV park in which he said he would allow the Department to inspect the premises for whatever it was instructed by regulation to inspect. He said, "I only ask one thing, to be notified of their coming in advance, so I may aid them in their inspection. If no such notification is sent, they will be instructed to leave." This letter was in response to the Department's request to inspect his swimming pool and sample his water supply. The Department also said it had no record of any permit to construct the necessary septic systems for an RV park. Peters' letter demonstrates a subjective expectation of privacy but again this expectation is not objectively reasonable given that Peters had invited the public onto his property for commercial purposes.
Peters also contends that he has a reasonable expectation of privacy because his residence is on the access road and the agents stepped off the road and onto his property. "People have a reasonable expectation of privacy in their homes." State v. Young, 123 Wash.2d 173, 189, 867 P.2d 593 (1994) (citing Payton v. New York, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). And, curtilage is that area "`so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.'" State v. Ridgway, 57 Wash. *916 App. 915, 918, 790 P.2d 1263 (quoting United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). "Curtilage questions are resolved with reference to four factors: (1) the proximity of the area claimed as curtilage to the home; (2) whether the area is included in an enclosure surrounding the house; (3) the nature of the uses to which the area is put; (4) the steps taken by the resident to protect the area from passersby." State v. Johnson, 75 Wash.App. 692, 706-07 n. 7, 879 P.2d 984 (1994) (citing Dunn, 480 U.S. at 301, 107 S.Ct. 1134; State v. Niedergang, 43 Wash.App. 656, 660, 719 P.2d 576 (1986)).
Here, there is no indication the Department entered the area intimately tied to Peters' home. The agents drove straight up the access road and stopped directly across from his residence. One of the agents walked with a camera to the RV's. "She walked off the road and onto the property itself." From this description it is unclear how far onto the property the agent stepped. But Exhibit A, an aerial photograph, shows the RV's are parked right next to the access road and are visible from the road. The exhibit and Pat Waslawski's declaration indicate that Peters' residence is across from the RV's but a considerable distance away. There is no evidence to suggest that the agents entered the curtilage. The area where the RV's were parked is open to the public and, thus, Peters cannot assert a reasonable expectation of privacy in this area. See Edmonds, 611 F.2d at 1386. Further, Peters made no effort to protect his home from passersby. Rather, he expressly invited the public onto his property for commercial purposes and posted an office sign on his residence. Because Peters does not have a reasonable expectation of privacy in the areas in which he invited members of the public, the trial court did not err in concluding that no search occurred.[5]
B. Conspiracy
The trial court properly dismissed Peters' conspiracy causes of action. "42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons or classes of persons of the equal protection of the law or of equal privileges and immunities under the law [and] only applies to discriminatory deprivations of federal rights against members of a protected class." Torrey v. City of Tukwila, 76 Wash.App. 32, 37-38, 882 P.2d 799 (1994) (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Here, Peters has not shown that he is a member of a protected class or that he has been denied equal protection of the laws. And, although Peters refers to a definition of conspiracy in Sears v. International Brotherhood of Teamsters Local 524, 8 Wash.2d 447, 112 P.2d 850 (1941), he provides no analysis or argument in support of a conspiracy cause of action under state law. We need not consider assertions that are given only passing treatment and are unsupported by reasoned argument. See Howell v. Spokane & Inland Empire Blood Bank, 117 Wash.2d 619, 624, 818 P.2d 1056 (1991).
C. Trespass
Peters also contends that the agents committed a common law trespass. Because the agents had a duty to identify failing septic systems, the trial court properly dismissed this cause of action.
A person "is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally... enters land in the possession of the other, or causes ... a third person to do so. "RESTATEMENT (SECOND) OF TORTS § 158 (1965); see Bradley v. American Smelting & Refining Co., 104 Wash.2d 677, 681, 709 P.2d 782 (1985). However,
[a] duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise, if, but only *917 if, all the requirements of the enactment are fulfilled.
RESTATEMENT, supra, § 211.
Citing the official comments to § 211, Peters argues that the Department did not follow all of the statutory requirements before entering his land. Comment (g) states: "Not only must every condition stipulated in the legislative enactment conferring the privilege be strictly complied with, but also the privilege must in all other particulars be exercised in a reasonable manner."
Peters relies primarily on RCW 43.70.200, which provides:
Upon the request of a local health officer, the secretary of health is hereby authorized and empowered to take legal action to enforce the public health laws and rules and regulations of the state board of health or local rules and regulations within the jurisdiction served by the local health department, and may institute any civil legal proceeding authorized by the laws of the state of Washington, including a proceeding under Title 7 RCW.
Based on this language, Peters argues that the Department was required to obtain a court order or a warrant before inspecting his property. We disagree. Local boards of health have a duty to enforce the state public health statutes and rules adopted by the state board of health. RCW 70.05.060; see RCW 43.20.050(4). A necessary pre-condition to enforcement of the public health laws is identification of their violation. For example, RCW 70.118.030 provides, "Local boards of health shall identify failing septic tank drainfield systems in the normal manner and will use reasonable effort to determine new failures." And even when, in 1998, the Legislature added detailed requirements and procedures for obtaining a warrant to inspect a suspected septic system failure, it retained the provision regarding "identification" of failing drainfields in the reasonable manner. See Laws of 1998, ch. 152, § 1. Thus, Peters has failed to show that the Department did not strictly comply with a specific legislative enactment by failing to obtain a court order or warrant before inspecting his property.[6]
Furthermore, the Department's entry onto Peters' land to identify on-site septic tank violations was reasonable. As discussed under the fourth amendment claim, the agents entered the property during the day, in a clearly marked vehicle, and on an access road advertised to the public.
D. Invasion of Privacy
Peters also claims that the Department invaded his right to privacy. We disagree.
The Supreme Court recently recognized the common law right of privacy. Reid v. Pierce County, 136 Wash.2d 195, 206, 961 P.2d 333 (1998). We look to the RESTATEMENT (SECOND) OF TORTS for the "guiding principles" of this cause of action. Reid, 136 Wash.2d at 206, 961 P.2d 333. The RESTATEMENT (SECOND) OF TORTS § 652B (1977) provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
In Mark v. KING Broadcasting Co., 27 Wash.App. 344, 356, 618 P.2d 512 (1980), Division One said, "The invasion or intrusion must be of something which the general public would not be free to view." In Mark, the court held that a news crew filming people inside a closed and locked pharmacy from outside the building did not invade the occupants' privacy. Mark, 27 Wash.App. at 354-57, 618 P.2d 512. Although the parties disputed whether the filming was conducted *918 from a public sidewalk or on private property, the court found this to be of no consequence. Mark, 27 Wash.App. at 355, 618 P.2d 512; see also Jeffers v. City of Seattle, 23 Wash.App. 301, 316, 597 P.2d 899 (1979). The filming took place in an area open to the public and without subterfuge. Mark, 27 Wash.App. at 355-56, 618 P.2d 512. Thus, "[t]here [was] no reason to believe that a person of ordinary sensibilities would be offended." Mark, 27 Wash.App. at 356, 618 P.2d 512 (citing Dietemann v. Time, Inc., 449 F.2d 245 (9th Cir.1971)). Here, as in Mark, the filming took place in an area that was open to the public and did not involve any subterfuge. The intrusion was not highly offensive, and a person of normal sensibilities would not have been offended thereby.
We affirm.
BRIDGEWATER, J., and HUNT, J., concur.
NOTES
[1] On motion for reconsideration, Peters submitted an additional affidavit in which he stated that the office sign was for "G & J Trucking" not the RV park. The trial court considered this affidavit in denying reconsideration.
[2] 42 U.S.C. § 1983 provides a cause of action for deprivation of federal constitutional and statutory rights. To establish his § 1983 claim, Peters must show that the defendants acted under color of state law and that their actions violated his federal constitutional rights. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The defendants concede that they were acting under color of state law.

Peters also claims damages under article 1, section 7 of the state constitution. But because he has not cited any authority recognizing this cause of action in Washington and has not set forth a reasoned argument for its creation, we need not consider his arguments. See Reid v. Pierce County, 136 Wash.2d 195, 213-14, 961 P.2d 333 (1998).
In his complaint, Peters also requested injunctive relief to prevent further and repeated acts by the Department. The right to injunctive relief requires a showing by the party seeking relief that he has (1) a clear legal or equitable right and (2) a well-grounded fear of immediate invasion of that right. Hollis v. Garwall, Inc., 137 Wash.2d 683, 699, 974 P.2d 836 (1999). Assuming Peters has a right to exclude the Department from his property under the state constitution, he has made no showing that the Department has threatened to repeat its actions. And we note that, according to Peters' submission on motion for reconsideration, a Lewis County ordinance that became effective after the Department's actions here, now requires county employees to receive permission from the land owner prior to entry on the property for permit inspections. LEWIS COUNTY, WA., CODE ch. 1.25 (1996).
[3] The fourth amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."
[4] When the Department visually inspected Peters' property and when our decision in Thurston County was issued, former RCW 70.118.030 (1996) provided, in part: "Local boards of health shall identify failing septic tank drainfield systems in the normal manner and will use reasonable effort to determine new failures." In 1998, the Legislature amended that statute to include a detailed procedure to obtain administrative search warrants. See Laws of 1998, ch. 152, § 1.
[5] Because we conclude that no fourth amendment violation occurred, we need not consider defendant Vinatieri's qualified immunity defense. See Benjamin v. Washington State Bar Ass'n, 138 Wash.2d 506, 527-28, 980 P.2d 742 (1999).
[6] On motion for reconsideration, Peters submitted chapter 1.25 of the Lewis County Code, entitled Entry Policy. Section 1.25.020 provides:

County employees will contact the property owner and/or resident either in writing or by telephone prior to entry upon an individual's property. The purpose of this contact is to receive affirmative permission to be on the property. In cases affecting public health and/or safety involving violations of Lewis County or state of Washington health laws or food services sanitation inspections, no notice will be required.
This ordinance took effect after the employees entered Peters' property.