[No. 23103–1–I. Division One. May 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. SANDRA J. ENTZ, *Appellant.*

*Dennis Benjamin* and *Andrew Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kathryn Goater* and *Cynthia S.C. Gannett, Deputies,* for respondent.

PEKELIS, J.—Sandra J. Entz appeals her conviction for aggravated first degree murder in the death of her husband, Marvin Entz. She contends the trial court erred in failing to instruct the jury on manslaughter and in instructing the

jury on the definition of "knowledge". She also contends her rights under the privileges and immunities clause of the Washington State Constitution were violated when the prosecutor elected to charge her with aggravated first degree murder and charged her codefendant, Rena Skilton, with the lesser offense of first degree murder. Finally, she assigns error to the trial court's failure to instruct the jury on immunized witness testimony. We affirm.

## I

Sandra Entz and her husband, Marvin Entz, lived with Marvin's two nephews James and Robert Cummings. The Entzes were not happily married and fought frequently. Entz told some of her friends and family that she wished Marvin were dead.

Sometime in the fall of 1987, Entz met Stephen Forbis through her friend, Rena Skilton, and they became romantically involved. While Marvin was away on a business trip, Forbis stayed at the Entz residence with her. Forbis left on November 13, 1987, the day before Marvin returned home.

Early in the morning on November 17, 1987, Marvin left the house to go to work. As he was getting into his car, he was shot twice. Robert Cummings heard two bangs, but did not investigate, believing that the noise was the sound of firecrackers exploding.

Later, when Robert left the house, he found Marvin lying in the driveway. He ran back inside the house and told Entz. According to Robert, Entz "kinda had a smile on her face. And then she started acting hysterical." Entz called 911, but Marvin was dead by the time the aid car arrived.

Shortly thereafter, Stephen Forbis arrived and attempted to enter the Entz home "to see the family". The police got his name and license number before he drove away in his pickup truck.

During their investigation, the police learned that neighbors had seen both Forbis and his truck at the Entz home on the morning of the shooting. In addition, James Cummings told Detective Earl Lee Tripp, the investigating

officer, that Forbis had stayed with Entz for a week while Marvin was away on business. James led police to the apartment of Rena Skilton where he believed Forbis parked his truck.

The police arrested Forbis when Guy Phillips and Lori Sands, friends of Forbis, dropped him off at Skilton's home. Forbis was later charged with and convicted of first degree murder.

Eventually, the police arrested Entz and Skilton and charged them with first degree murder as Forbis' accomplices. Before trial, the State amended the information to charge Entz with aggravated first degree murder.

At trial, the State presented several witnesses who testified that Entz met Forbis after Skilton, on Entz's behalf, contacted Forbis to hire him to murder Marvin. The witnesses testified that Entz agreed to pay Forbis some of the proceeds of various life insurance policies on Marvin's life.

Neither Entz nor Skilton testified. However, Entz's counsel argued that Entz was a weak and vulnerable woman who was manipulated by Skilton, Forbis and others. They, not Entz, were the ones who conspired to murder Marvin and then "fleece[] the widow of the estate assets." Skilton's counsel argued that Skilton was not involved in the conspiracy to murder Marvin but was being "framed" by Lori Sands, another of Forbis' lovers, and others.

The jury found Skilton guilty of first degree murder and Entz guilty of aggravated first degree murder. Entz brings this timely appeal.

## II

Entz first contends the trial court erred in refusing to submit her proposed instructions on first degree manslaughter, on the definition of "recklessness", and on the definition of "proximate cause".

The State's theory of liability was that Entz acted as an accomplice to Forbis, the "trigger man". Entz's theory, on the other hand, was that while Entz expressed to Forbis her wish that her husband would die, she did not intend Forbis to take her seriously. According to this theory, Forbis,

Sands and others took advantage of Entz and killed Marvin to obtain the insurance proceeds. The defense argued that Entz was, at most, reckless in expressing the "death wish" for her husband, but was not guilty of first degree murder.

Based on this theory, Entz proposed instructions on manslaughter, recklessness and proximate cause. However, the trial court rejected Entz's proposed instructions, stating:

> the reason I did not have a manslaughter instruction in this case is that were she to have acted recklessly and not as an accomplice, there really is insufficient proximate cause to have the case submitted to the jury. In other words, the Court would find that if it were not accomplice liability here, you would not submit this case to the jury on the basis of what [Entz]'s own acts caused.

A person is guilty of first degree manslaughter when she "recklessly causes the death of another person". RCW 9A.32.060. RCW 9A.08.010(1)(c) provides that a person acts "recklessly" when she

> knows of and disregards a *substantial* risk that a wrongful act may occur and [her] disregard of such *substantial* risk is a gross deviation from conduct that a reasonable [person] would exercise in the same situation.

(Italics ours.)

A defendant is entitled to an instruction on a lesser included offense if two requirements are met: (1) each of the elements of the lesser offense must be a necessary element of the offense charged; and (2) the evidence must support an inference that only the lesser crime was committed. *State v. Fowler*, 114 Wn.2d 59, 66–67, 785 P.2d 808 (1990) (citing *State v. Workman*, 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978)).

The State concedes that the "legal" prong of the *Workman* test has been met. Thus, our analysis is confined to the second prong, *i.e.*, whether the evidence supports an inference that only manslaughter was committed. *State v. Robinson*, 12 Wash. 349, 41 P. 51 (1895) is instructive on this issue. There, the State sought to prove the defendant's guilt by establishing that although he was not present at

the murder of the victims, he was guilty as an accomplice for conspiring with others to murder them. The jury acquitted the defendant of first and second degree murder, but convicted him of manslaughter. *Robinson,* 12 Wash. at 350. The Supreme Court reversed, concluding that there was insufficient evidence to support a verdict of manslaughter. *Robinson,* 12 Wash. at 351.

 Likewise, in this case, the evidence is uncontroverted that Entz was not present when Forbis killed the victim. Therefore, the only evidence of Entz's recklessness was that she allegedly told Forbis she wished her husband were dead, an act which occurred well before the murder, like the alleged conspiracy in *Robinson.* We hold that this act by itself, as a matter of law, does not support a conviction for first degree manslaughter. Such a "death wish" does not carry with it the "substantial" risk that a third party will actually kill the victim. Accordingly, the trial court was correct in refusing to instruct the jury on manslaughter.[1]

### III

Entz next contends the trial court erred in giving instruction 14 which defined "knowledge" because it allowed the jury to use an objective standard to determine whether Entz knowingly solicited the murder of her husband. Entz seeks to avoid the consequences of her failure to raise this issue below by arguing that the trial court's instruction violated her right to due process.

The trial court gave the following instruction on the element of knowledge:

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.

---

[1]Entz's reliance on *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981) and *State v. Berge,* 25 Wn. App. 433, 607 P.2d 1247, *review denied,* 94 Wn.2d 1016 (1980) is misplaced. In both cases, the defendants *actually* killed their victims. *See Jones,* 95 Wn.2d at 618 (defendant while intoxicated stabbed victim during a fight); *Berge,* 25 Wn. App. at 434 (defendant shot victim while under the influence of cocaine). It is undisputed that Entz did not actually kill Marvin and was not even present at the killing. Therefore, *Jones* and *Berge* are inapposite.

*If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.*

Acting knowingly or with knowledge also is established if a person acts intentionally.

Knowledge or intent is not established if a person merely acts recklessly. A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

(Italics ours.)

■ The italicized portion of this instruction follows verbatim revised WPIC 10.02 which was drafted in response to *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980). The constitutionality of that instruction has been consistently affirmed. *State v. Barrington,* 52 Wn. App. 478, 485, 761 P.2d 632 (1988), *review denied,* 111 Wn.2d 1033 (1989); *State v. Rivas,* 49 Wn. App. 677, 689–90, 746 P.2d 312 (1987); *State v. Davis,* 39 Wn. App. 916, 919–20, 696 P.2d 627 (1985).

Moreover, Entz's attempt to introduce two additional "requirements" under *Shipp* must fail. First, as the State correctly points out, the trial court's instructions, read as a whole, clearly require the jury to find that the defendant acted "knowingly". In addition, unlike the instruction at issue in *Shipp,* the trial court's instructions here did not, as Entz asserts, prevent the jury from considering whether Entz was less intelligent or less attentive than the ordinary person in its determination of whether she acted "knowingly". *See Davis,* 39 Wn. App. at 919–20. Accordingly, the trial court did not err in giving its instruction defining "knowledge".

## IV

Entz contends the State violated her constitutional rights under the privileges and immunities clause by charging her with aggravated first degree murder and her codefendant with first degree murder. She also contends that because

the prosecutor's charging decision violated her constitutional rights, the trial court erred in denying her motion to reduce the charge.

■ Prosecutors are vested with wide discretion in determining whether to charge suspects with criminal offenses. *State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984) (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 54 L. Ed. 2d 604, 98 S. Ct. 663, *reh'g denied,* 435 U.S. 918, 55 L. Ed. 2d 511, 98 S. Ct. 1477 (1978)). One factor the prosecutor may consider in deciding whom to prosecute is the strength of the case which could be proven. *Judge,* 100 Wn.2d at 713. A prosecutor's decision to charge one person, but not others, guilty of the same crime does not violate the equal protection clause or the privileges and immunities clause of the United States Constitution, so long as the selection was not "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Judge,* 100 Wn.2d at 713 (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962)).

Entz concedes that "she cannot meet the test for selective prosecution under the federal equal protection clause." She contends, however, that the Washington State Constitution's privileges and immunities clause affords her greater protection than the federal constitution's Fourteenth Amendment, citing *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

■ However, the Washington Supreme Court recently held the equal protection clause of the federal constitution and the privileges and immunities clause of the Washington State Constitution "are substantially identical and have been considered by this court as one issue." *American Network, Inc. v. Utilities & Transp. Comm'n,* 113 Wn.2d 59, 77, 776 P.2d 950 (1989) (citing *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 476, 611 P.2d 396 (1980); *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956); *Texas Co. v. Cohn,* 8 Wn.2d 360, 374, 112 P.2d 522 (1941)). In light of this direct holding, we disagree with Entz's assertion that we must nevertheless apply the *Gunwall* factors

to resolve an issue which has been previously decided. Instead we hold that since Entz concedes she cannot establish a violation of the Fourteenth Amendment under the federal constitution, she cannot establish a violation of the privileges and immunities clause under the Washington State Constitution.[2]

V

Entz finally contends the trial court erred in refusing to give the defense's proposed instructions on testimony of immunized witnesses. She argues that although the trial court gave proper cautionary instructions regarding the testimony of accomplices, a cautionary instruction regarding the testimony of *immunized* witnesses was required because some of the immunized witnesses were not accomplices to the crime.

█ As Entz concedes, no Washington court has determined that a cautionary instruction is required whenever a witness testifies under a grant of immunity. Thus, whether any additional instruction on this subject was required was within the discretion of the trial court. *See State v. Long,* 19 Wn. App. 900, 902, 578 P.2d 871 (citing *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 224–25, 562 P.2d 1276, *review denied,* 89 Wn.2d 1010 (1977)), *review denied,* 91 Wn.2d 1010 (1978).

Entz names four immunized witnesses whom she contends were not accomplices: Lori Sands, Deborah and Ensley ("Rob") Robertson, and Guy Phillips. However, the

---

[2]Even if we were required to reach the issue, we would conclude that the prosecutor's decision to charge Entz with aggravated first degree murder and Skilton with first degree murder was not based on any impermissible ground, but, as the State contends, on the difference in the strength of evidence against each defendant. There was strong evidence revealing Entz's emotional and financial motives to have her husband killed, her active participation in contracting for her husband's murder, and her attempts to keep Forbis from being apprehended. In contrast, there was much less evidence regarding Skilton's involvement in the murder plot, and there was no evidence Skilton was going to benefit financially as a result of the victim's murder.

record demonstrates that all of these witnesses were, arguably, accomplices to the murder.

Lori Sands knew of the murder plot, agreed to serve as Forbis' alibi after the shooting, and offered to help Forbis leave town to avoid arrest. Similarly, Deborah and Ensley ("Rob") Robertson knew of the murder plot, sawed off Forbis' shotgun (the murder weapon), and shortly after the murder went to collect $500 from Entz. Although Guy Phillips did not participate in the shooting of Marvin, he had agreed to be the getaway driver on a prior aborted attempt to murder the victim and was clearly aware of the murder plot.

Thus, it is likely that the jury believed that these immunized witnesses acted as accomplices. In fact, both the prosecutor and defense counsel characterized these witnesses as "coconspirators". Under these circumstances, the court's instruction that accomplice testimony was to be viewed with caution permitted defense counsel to argue his theory of the case, *i.e.,* that these "coconspirators" gave testimony implicating Entz to avoid further liability. The trial court did not abuse its discretion.

Affirmed.

WINSOR and FORREST, JJ., concur.

Review denied at 115 Wn.2d 1019 (1990).