[No. 11244-6-III.   Division Three.   November 17, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. RICARDO C. APODACA, *Appellant.*

*Hugh M. Spall,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John C. Monter, Deputy,* for respondent.

SWEENEY, J. — Ricardo C. Apodaca appeals his conviction of attempted second degree assault. The dispositive issue is whether consent was freely and voluntarily given for the warrantless entry by two police officers into Mr. Apodaca's home. We conclude it was not and reverse.

## FACTS

On May 27, 1990, Yakima Police Officer Phillip Posada and Officer James Giles responded to a call regarding a hit and run accident involving intoxicants.[1] Upon arriving, the officers spoke with a witness and the owner of the damaged vehicle. They were told that Mr. Apodaca put his car up to the back bumper of an unattended vehicle blocking his driveway and pushed the vehicle onto the curb. The owner of the vehicle told the officers that Mr. Apodaca had notified him of the incident and provided his address.

Officer Posada and Officer Giles went to Mr. Apodaca's home to obtain Mr. Apodaca's identification and ask him his version of the incident. They knocked on the door of Mr. Apodaca's home; Mr. Apodaca's wife answered. The officers told her they were investigating an accident and asked to speak to her husband. Mrs. Apodaca told the officers her husband was asleep. They advised her the situation was serious and offered to help her wake Mr. Apodaca. She refused their offer.

Officer Giles again advised Mrs. Apodaca the matter was serious and that a crime was involved. He informed her that if need be, the officers "could get a search warrant for the house and a warrant for Mr. Apodaca . . .". Mrs. Apodaca was nervous and scared. She told the officers a warrant would not be necessary and allowed them into the house. She led them to the bedroom where Mr. Apodaca was asleep.

The officers stood over Mr. Apodaca's bed, woke him up and told him to remove the covers so his hands were visible. Officer Posada asked Mr. Apodaca for identification and explained their presence. Still lying down, Mr. Apodaca voiced his unwillingness to cooperate. The officers told him that if he did not cooperate, he could be arrested.

Mr. Apodaca left his bed and again refused to show the officers his identification. He placed his hands behind his back and told the officers, in an agitated voice, that if they

---

[1] Because the vehicle Mr. Apodaca struck was unattended, no one was injured, and only minor damage resulted, RCW 46.52.010 (the unattended vehicle statute) is applicable rather than RCW 46.52.020, the hit and run statute.

wanted to arrest him, they should do so. The officers told Mr. Apodaca they only wanted to see his identification.

Mrs. Apodaca told the officers she would get her husband's driver's license from his wallet. Mr. Apodaca told her to stay where she was and then said, "Well, I've had enough of this. I'll take care of this right now." Mr. Apodaca lurched forward toward a dresser drawer in his bedroom. Mrs. Apodaca yelled, "No. No.", and moved toward her husband. The officers grabbed Mr. Apodaca, laid him face down on the bed and handcuffed him.

Officer Posada inspected the dresser drawer. He found items of ladies' clothing and a loaded single action revolver. Mr. Apodaca was arrested and charged with attempted second degree assault. RCW 9A.36.021(1)(c).

At a suppression hearing, Mr. Apodaca argued that the statements he made to police officers and the gun found in the dresser should be excluded from evidence. He asserted Mrs. Apodaca's consent was not voluntary, there were no exigent circumstances to justify the officers' entry into his home and that the officers had failed to obtain the consent of both joint owners as required by *State v. Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989).

The court denied the motion to suppress, ruling that the officers, in the performance of their duties, had a responsibility to see "if they could identify a Rick, see if an individual lived there who was driving the vehicle." The court determined that Mrs. Apodaca was reluctant to admit the officers, but when advised that the officers could obtain a warrant, she admitted them. Written findings of fact and conclusions of law were not entered.

A jury found Mr. Apodaca guilty of attempted second degree assault. This appeal followed.

### WARRANTLESS ENTRY

Mr. Apodaca contends the officers' entry into his home without a warrant was illegal because Mrs. Apodaca's consent was not freely and voluntarily given. He argues the consent was obtained only after the officers erroneously claimed

they could obtain a telephone warrant. Mr. Apodaca asserts there was no crime to support the issuance of a warrant based on probable cause because he had notified the owner of the vehicle of the incident. RCW 46.52.010.

■ In reviewing a trial court's findings of fact following a suppression hearing, this court makes an independent review of all the evidence. *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990); *State v. Agee*, 89 Wn.2d 416, 419, 573 P.2d 355 (1977). As a preliminary matter, we note that the trial court failed to enter written findings of fact. CrR 3.6. Because the court's oral opinion is comprehensive, we do not remand for entry of findings. *State v. Rowe*, 63 Wn. App. 750, 752 n.2, 822 P.2d 290 (1991); *see State v. Pena*, 65 Wn. App. 711, 829 P.2d 256 (1992).

■ Whether consent is voluntary or is the product of duress or coercion is a question of fact to be determined from the totality of the circumstances. *State v. Cass*, 62 Wn. App. 793, 795, 816 P.2d 57 (1991), *review denied*, 118 Wn.2d 1012 (1992); *State v. Raines*, 55 Wn. App. 459, 462, 778 P.2d 538 (1989), *review denied*, 113 Wn.2d 1036 (1990). The State has the burden of proving that consent was voluntarily given, by clear and convincing evidence. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990); *State v. Shoemaker*, 85 Wn.2d 207, 210, 533 P.2d 123 (1975).

It is undisputed that the officers told Mrs. Apodaca they could obtain a warrant if she refused to allow them to enter. Officer Giles testified that he told her: "if need be, we could get a search warrant for the house and a warrant for Mr. Apodaca and come into the house under the warrant situation and wake him up that way." Officer Posada testified, "Officer Giles explained to her that we could go get a search warrant if she wasn't going to invite us in." Mrs. Apodaca testified the officers told her they "can phone a warrant in."

■ Valid consent may be given following a threat to obtain a warrant. *State v. Smith, supra* at 790. Threats to obtain a search warrant may, however, invalidate consent subsequently given if grounds for obtaining the warrant did

not exist. *See* 3 W. LaFave, *Search and Seizure* § 8.2(c) (2d ed. 1987). Police officers may not misrepresent the scope or extent of their authority to obtain a search warrant. 3 W. LaFave, at 188-89.

In this case, the officers were authorized under RCW 10.31-.100(3)(a)[2] to arrest Mr. Apodaca, without a warrant, if he violated RCW 46.52.010 which provides in part:

> The operator of any vehicle which collided with any other vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the operator and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice, giving the name and address of the operator and of the owner of the vehicle striking such other vehicle.

The offense does not have to be committed in the officer's presence. *State v. Williams*, 50 Wn. App. 696, 699, 750 P.2d 278 (1988).

Officer Posada and Officer Giles were told following their arrival at the scene that Mr. Apodaca had notified the owner of the vehicle about the incident. Mr. Apodaca complied with the statute and, therefore, the officers' threat to obtain a warrant to search the residence and arrest Mr. Apodaca was coercive. Mrs. Apodaca's reluctant consent, in response to the officers' threat to obtain a warrant, was not freely and voluntarily given. The officers' entry into Mr. Apodaca's home was a violation of Mr. Apodaca's Fourth Amendment constitutional right which protects citizens from unreasonable searches and seizures.[3] Accordingly, we reverse his con-

---

[2]RCW 10.31.100(3) provides:

"Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

"(a) RCW 46.52.010, relating to duty on striking an unattended car or other property;"

[3]The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .". Article 1, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

viction of attempted second degree assault. *See Bumper v. North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968) (a search prosecuted in violation of the constitution is unlawful); *State v. Johnson,* 16 Wn. App. 899, 901, 559 P.2d 1380 (evidence obtained through constitutionally invalid search is inadmissible), *review denied,* 89 Wn.2d 1002 (1977).

The gun and Mr. Apodaca's statements should have been suppressed. Since insufficient evidence remains to remand for retrial, the case is reversed and dismissed.

THOMPSON, A.C.J., and MUNSON, J., concur.