[No. 18136–3–II.   Division Two.   May 3, 1996.]
JAMES KALMAS, ET AL., *Appellants*, v. DONALD
WAGNER, ET AL., *Respondents*.

*Ralph Seeley* and *Neil J. Hoff & Associates*, for appellants.

*John W. Ladenburg, Prosecuting Attorney*, and *Ronald L. Williams, Deputy*, for respondents.

MORGAN, J. — The defendants, two Pierce County deputy sheriffs, attempted to referee a dispute between the plaintiffs and the plaintiffs' landlord. Thereafter, the

plaintiffs sued the defendants, based on 42 U.S.C. § 1983. The trial court granted summary judgment to the defendants, and the plaintiffs appealed. We reverse the order granting summary judgment.

Taken in the light most favorable to the plaintiffs,[1] the facts are as follows: On September 17, 1990, James Kalmas and Kyra Sharpe rented a house in Tacoma. They also signed a written rental agreement that included the following provision:

> Lessor hereby reserves, and the Lessee hereby grants to the Lessor or his agents, the right to enter said leased premises at reasonable times, for the purpose of making repairs or to inspect the premises, [or] to show the dwelling to prospective tenants after notice of termination.[2]

On May 10, 1991, the landlord gave Kalmas and Sharpe a "20–Day Notice to Terminate Tenancy."[3] On May 15, the landlord notified Kalmas and Sharpe that she wanted to show the house the next day between 1:30 and 3:30 p.m. The same day, Kalmas called the landlord and said he would not allow the proposed entry.

The next day, May 16, the landlord came to the home with a realtor and a prospective new tenant. Kalmas answered the door and refused entry. He also told Sharpe to call the sheriff.[4] The realtor and prospective tenant left, but the landlord remained.

Two deputies soon arrived. After speaking with the parties and examining the landlord's "paperwork," they told Kalmas that the landlord had a legal right to enter, and that he would be arrested if he persisted in refusing entry.[5] To avoid arrest, he said the landlord could enter, but only

---

[1]*Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

[2]Clerk's Papers at 36.

[3]Clerk's Papers at 37.

[4]According to the defendants, Kalmas was foul–mouthed and rude.

[5]According to Deputy Jones:

if accompanied by one of the officers. The landlord and one deputy entered and made an "inspection"[6] which, according to the defendants, lasted for "no more than one minute."[7]

Kalmas and Sharpe sued for damages under 42 U.S.C. § 1983.[8] Both sides sought summary judgment on liability, and the trial court granted summary judgment to the defendants. Kalmas and Sharpe then filed this appeal.

■ ■ To prove a cause of action based on 42 U.S.C. § 1983, a plaintiff must show (1) that the defendant violated a federal constitutional or statutory right, and (2) that the defendant was acting under color of state law.[9] A plaintiff who proves these elements is entitled to at least nominal damages,[10] unless the defendant has a defense

---

We explained that [Kalmas] doesn't have the legal right to bar them if he's been given the 24–hour written notice, and Deputy Wagner said that he could be subject to arrest.

Clerk's Papers at 12; *see also* Clerk's Papers at 33, 51, 55.

[6]Clerk's Papers at 55.

[7]Clerk's Papers at 33.

[8]Neither party has seen fit to include the complaint in the record on appeal. Plaintiffs stated at oral argument that they had originally asserted causes of action based on 42 U.S.C. § 1983 and common law trespass, but that they were abandoning the cause of action for trespass.

[9]*Snohomish County v. Anderson*, 124 Wn.2d 834, 843, 881 P.2d 240 (1994); *Washington Mfd. Hous. Ass'n v. Public Util. Dist. No. 3*, 124 Wn.2d 381, 388, 878 P.2d 1213 (1994); *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765, cert. denied sub nom. *Robinson v. City of Seattle*, 506 U.S. 1028 (1992); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 117, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079 (1993); *American Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 12, 802 P.2d 784 (1991); *Jordan v. City of Oakville*, 106 Wn.2d 122, 134, 720 P.2d 824 (1986); *Turngren v. King County*, 104 Wn.2d 293, 311, 705 P.2d 258 (1985); *Kuehn v. Renton School Dist. No. 403*, 103 Wn.2d 594, 598, 694 P.2d 1078 (1985).

[10]*Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (nominal damages for procedural due process violation); *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) ("In an action brought pursuant to section 1983, 'even when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of violation of a substantive constitutional right.' "); *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993) ("Absent a showing of causation and actual injury, a plaintiff is entitled

such as qualified immunity.[11] We consider (1) whether the plaintiffs are entitled to a trial on the first element of their cause of action; (2) whether they are entitled to a trial on the second element of their cause of action; and (3) whether the defendants are qualifiedly immune as a matter of law.

## I

The plaintiffs contend they can establish the first element of their cause of action by showing that the defendants participated in a search that violated the Fourth Amendment. That Amendment provides in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." It restricts governmental conduct, but not private conduct.[12] By its terms, it is violated by a search that is unreasonable. Thus, two questions arise here: (A) Can we say as a matter of law that there was no search for Fourth Amendment purposes? (B) If we cannot, can we say as a matter of law that whatever search occurred was reasonable?

## A

Rephrased, the first question is whether a jury could find that there was a search for Fourth Amendment purposes. "Under the Fourth Amendment, a search occurs if the government intrudes upon a subjective and reasonable expectation of privacy."[13] Here, the plaintiffs clearly had a subjective and reasonable expectation of privacy in

only to nominal damages."); *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991)(same).

[11]*E.g., Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

[12]*United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); *Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921).

[13]*State v. Young*, 123 Wn.2d 173, 181, 867 P.2d 593 (1994) (citing *Katz v. United States*, 389 U.S. 347, 351-52, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)); *State*

the home they were renting. Moreover, for reasons discussed below, a jury could find that the landlord intruded into the home without consent.[14] Thus, the issue regarding a search is whether a jury could find that the landlord's intrusion occurred with governmental participation. If it could, we must assume, for purposes of summary judgment, that there was a search within the meaning of the Fourth Amendment.

A case on point is *Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987), *rev'd in part on other grounds on reh'g*, 853 F.2d 805 (1988), *cert. denied*, 488 U.S. 1008 (1989). There, Jacobs, a private citizen, obtained a writ of assistance directing any sheriff to help him repossess a computer. Thinking the computer might be located at the Spechts' home, he went to the home with two friends, a police officer named Owens, and another officer who was with Owens. Ms. Specht answered the door and invited Owens to come in. The other four men entered uninvited. Jacobs stated that he had a search warrant to seize a stolen computer. He and Owens both told Mrs. Specht that if she did not cooperate, Owens would arrest her and take her to jail. A heated exchange followed, "while the men began milling around the kitchen, and living and dining areas."[15] After 30 to 40 minutes, the men left.

■ The Spechts sued under § 1983 and, after a jury trial, the district court entered a substantial judgment. The defendants appealed to the Tenth Circuit, and that court analyzed whether the officers had triggered the Fourth Amendment by the way in which they had participated in Jacobs's conduct. It said:

---

*v. Goucher*, 124 Wn.2d 778, 782, 881 P.2d 210 (1994); *State v. Kealey*, 80 Wn. App. 162, 167, 907 P.2d 319 (1995).

[14]We think the plaintiffs can base a claim on the landlord's entry, for if the plaintiffs' version of the facts be believed, they at all times maintained their right not to admit the landlord to the home at the particular time in issue. We do not think the plaintiffs can base a claim on the deputy's entry, as opposed to the deputies' participation in the landlord's entry, because after it had been determined that the landlord would enter, Kalmas asked the deputy to enter also.

[15]*Specht*, 832 F.2d at 1520.

When a government official affirmatively facilitates or encourages an unreasonable search performed by a private person, a constitutional violation occurs. *See, e.g., Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir. 1985) (police presence, even absent active participation, could provide an intimidating "cachet of legality," establishing a constitutional violation); *Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir. 1981) (issue whether police officer did more than merely "stand by in case of trouble" involves factual determination.)[16]

On the other hand, the court said, a police officer does not trigger the Fourth Amendment merely because he or she acts as a peacekeeping bystander.[17] The test for whether an officer triggers the Fourth Amendment is whether the officer makes an affirmative contribution to the private conduct.[18]

A case with analogous facts is *Soldal v. Cook County,* 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992). There, the plaintiff owned and resided in a trailer home that was situated on a rented lot in a mobile home park. When the plaintiff failed to pay the rent, the landlord decided to evict him without obtaining the court order that was required under state law. The landlord "requested the presence of sheriff deputies to forestall any possible resistance,"[19] and later that day a deputy and two employees of the landlord arrived at the plaintiff's home. "The employees proceeded to wrench the sewer and water connections off the side of the trailer home, disconnect the phone, tear off the trailer's canopy and skirting, and hook the home to a tractor."[20] The deputy explained to the plaintiff that "he was there to see that [plaintiff] didn't interfere with [the

---

[16]*Specht,* 832 F.2d at 1523.

[17]*Specht,* 832 F.2d at 1524.

[18]*Specht,* 832 F.2d at 1524.

[19]*Soldal,* 506 U.S. at 58.

[20]*Soldal,* 506 U.S. at 58.

landlord's] work."[21] By this time, two other deputies had arrived, and the plaintiff told them he wanted to file a complaint for trespass. They referred him to a lieutenant who, after talking with the district attorney, said he "would not accept a complaint because 'it was between the landlord and the tenant . . . [and] they were going to go ahead and continue to move out the trailer.' "[22] Eventually, the trailer was hauled to neighboring property.[23]

The plaintiff filed a § 1983 action against the deputies. The district court granted summary judgment to the defendants, and the plaintiff appealed to the Seventh Circuit. That court ruled "that because the police prevented [plaintiff] from using reasonable force to protect his home from private action that the officers knew was illegal, there was sufficient evidence of conspiracy between the private parties and the officers to foreclose summary judgment for [the deputies]."[24] As a result, the case was "as if the deputy sheriffs themselves seized the trailer, disconnected it from the utilities, and towed it away."[25] The court affirmed the summary judgment of dismissal, however, on grounds that a seizure not accompanied by a search, even if unreasonable, did not violate the Fourth Amendment.

The plaintiffs appealed again, this time to the United States Supreme Court. That Court was "not inclined to review" the holding that the police and the landlord had

---

[21]*Soldal*, 506 U.S. at 58.

[22]*Soldal*, 506 U.S. at 58.

[23]The Supreme Court commented that during the entire episode, the deputies "knew that [the landlord] did not have an eviction order and that its actions were unlawful." *Soldal*, 506 U.S. at 59. The reason for the comment, however, is not clear. As the *Specht* court noted, the Supreme Court "has never implied that the existence of a constitutional violation hinges upon the official's mental state." *Specht*, 832 F.2d at 1522. Rather, mental state affects qualified immunity and the availability of damages as a remedy. *Specht*, 832 F.2d at 1523.

[24]*Soldal*, 506 U.S. at 60 n.6.

[25]*Soldal*, 506 U.S. at 60 n.4.

acted in concert.[26] It did review, however, the question whether the Fourth Amendment applied to a seizure not accompanied by a search. Answering in the affirmative, it reversed and remanded for further proceedings.

Here, a jury could find that there was a Fourth Amendment search. Taking the evidence in the light most favorable to plaintiffs, it could find that the defendants went beyond mere peacekeeping and threatened Kalmas with arrest if he persisted in denying entry to the landlord; that the landlord was able to enter the home due to that threat; and thus that the defendants participated in the landlord's entry of the home.

## B

■ Rephrased, the next question is whether a jury could find that the search was unreasonable. Appropriately, the defendants do not contend it was justified by either the parties' rental contract or Washington's landlord–tenant statute.[27] Assuming the plaintiffs breached the parties' rental contract, the remedy was to sue for breach of contract. Assuming the plaintiffs breached the landlord–

---

[26]*Soldal*, 506 U.S. at 60 n.6.

[27]*See* RCW 59.18.150. It provides:

(1) The tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed repairs, alterations, or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers, or contractors.

(2) The landlord may enter the dwelling unit without consent of the tenant in case of emergency or abandonment.

3) The landlord shall not abuse the right of access or use it to harass the tenant. Except in the case of emergency or if it is impracticable to do so, the landlord shall give the tenant at least two days' notice of his or her intent to enter and shall enter only at reasonable times. The tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit at a specified time where the landlord has given at least one day's notice of intent to enter to exhibit the dwelling unit to prospective or actual purchasers or tenants. A landlord shall not unreasonably interfere with a tenant's enjoyment of the rented dwelling unit by excessively exhibiting the dwelling unit.

(4) The landlord has no other right of access except by court order, arbitrator or by consent of the tenant.

tenant statute, the remedy was to sue for the relief described in the statute.[28] In neither case was the remedy an immediate warrantless search of the plaintiffs' home, even though the home was rented rather than owned.

The defendants do make two contentions regarding justification. First, they argue the search was justified by the existence of an emergency. Second, they argue the search was justified because the plaintiffs' consented to the landlord's entry.

The first argument fails as a matter of law. Even assuming that an emergency existed because the landlord and tenant were arguing at the door, no reasonable person could find that it required entry into the house.[29]

■ The second argument raises a question of fact for trial. Consent must be voluntary,[30] and voluntariness depends on all the circumstances.[31] One relevant circumstance is the existence of a threat, and consent can be involuntary if obtained by threat.[32] Here, a jury could find that Kalmas admitted the landlord not because he wanted

---

(5) A landlord or tenant who continues to violate this section after being served with one written notification alleging in good faith violations of this section listing the date and time of the violation shall be liable for up to one hundred dollars for each violation after receipt of the notice. The prevailing party may recover costs of the suit or arbitration under this section, and may also recover reasonable attorneys' fees.

[28]See the preceding note.

[29]See State v. Menz, 75 Wn. App. 351, 354, 880 P.2d 48 (1994), review denied, 125 Wn.2d 1021 (1995); State v. Gocken, 71 Wn. App. 267, 277, 857 P.2d 1074 (1993), review denied, 123 Wn.2d 1024 (1994); State v. Swenson, 59 Wn. App. 586, 589, 799 P.2d 1188 (1990)("there must be some reasonable basis to associate the emergency with the place searched"); State v. Sanders, 8 Wn. App. 306, 310, 506 P.2d 892 (officer must point to specific and articulable facts warranting intrusion into place searched), review denied, 82 Wn.2d 1002 (1973).

[30]State v. Hastings, 119 Wn.2d 229, 234, 830 P.2d 658 (1992) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).

[31]State v. McCrorey, 70 Wn. App. 103, 111, 851 P.2d 1234, review denied, 122 Wn.2d 1013 (1993).

[32]Schneckloth, 412 U.S. at 228 ("Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force"); State v. Apodaca, 67 Wn. App. 736, 739–40, 839 P.2d 352 (1992)(groundless threat may cause consent to be involuntary), overruled on

to, but because he thought he would be arrested if he did not. Such a finding would connote a lack of consent, an unjustified search, and a violation of the Fourth Amendment. We conclude that the first element of the plaintiffs' cause of action presents questions of fact that cannot be resolved on summary judgment.

## II

■ To establish the second element of their cause of action, the plaintiffs claim the defendants were acting under color of law. "The traditional definition of acting under color of state law requires that the defendant in a 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[33] Thus, it is generally true that "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."[34] Here, then, the defendants were acting under color of law.

## III

■ According to the defendants, they are immune as a matter of law. As they correctly point out, police officers performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[35] Beyond question, however, it was clearly

other grounds by State v. Mierz, 127 Wn.2d 460, 474–75, 901 P.2d 286 (1995); see also Bumper v. North Carolina, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)(consent to search involuntary where officer claims authority he did not have).

[33]West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (citing United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed 1368 (1941), and Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)).

[34]Atkins, 487 U.S. at 50.

[35]Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); see also Anderson v. Creighton, 483 U.S. at 639.

established at the time pertinent here that an officer may arrest or threaten to arrest for crime, but not for breach of contract. Similarly, it was obvious from RCW 59.18.150 that arrest was not a remedy for violating that statute. Because a jury could find that an objectively reasonable officer would have known of these provisions, the defendants are not immune as a matter of law,[36] and summary judgment was improvidently granted.

Reversed and remanded for further proceedings.

SEINFELD, C.J., and BRIDGEWATER, J., concur.

Review granted at 130 Wn.2d 1015 (1996).

---

[36]*Cf. Walden v. City of Seattle*, 77 Wn. App. 784, 788, 892 P.2d 745 (1995) ("qualified immunity may be established as a matter of law on a motion for summary judgment or for a directed verdict . . . . Fact questions may, however, preclude summary judgment in some cases") (citing *Robinson v. City of Seattle*, 119 Wn.2d 34, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992), and *Altshuler v. City of Seattle*, 63 Wn. App. 389, 394–95, 819 P.2d 393 (1991), *review denied*, 118 Wn.2d 1023 (1992)).