[No. 19160-1-II.   Division Two.   February 21, 1997.]
THURSTON COUNTY RENTAL OWNERS ASSOCIATION, ET AL., *Appellants*, v. THURSTON COUNTY, ET AL., *Respondents*.

174

*Stephen J. Hosch, Michael G. Gusa,* and *Hosch Law Office,* for appellants.

*Bernardean Broadous, Prosecuting Attorney,* and *Jeffrey S. Myers, Deputy,* for respondents.

HOUGHTON, C.J. — Thurston County Rental Owners Association (the Association) challenged Thurston County's (the County) permit system for on-site septic tank systems, arguing that: (1) the County lacks authority to require the permits and impose the fees; (2) the County has spent the revenue from the fees in an unlawful or unconstitutional manner; (3) the permit program violates due process and equal protection rights under the federal and state constitutions; and (4) the County's inspection program amounts to an unconstitutional search. The trial court upheld the permit system. We affirm.

## FACTS

About 57 percent of Thurston County residents use an on-site septic system for sewage disposal. The County estimates that between 32,000 and 37,000 septic systems are currently in use within Thurston County. County residents rely almost exclusively upon ground water for drinking and other domestic uses. Failing septic systems can discharge untreated effluent, contaminating ground

water and surface water. Untreated sewage can also contaminate shellfish and other marine animals.

In June 1990, the Thurston County Board of Health adopted a set of rules and regulations governing sewage disposal (Ordinance). Ordinance Section 10.4 requires anyone building a new septic system to obtain a construction permit. Ordinance Section 10.5 requires anyone repairing an existing septic system to obtain a repair permit.

Ordinance Section 10.6 requires septic system owners to obtain operation permits in order to use their systems. The Ordinance requires operation permit holders to record "[a] covenant showing the existence of the Operational Permit" with the county auditor. Operation permits are valid for no more than five years and are typically issued for a four-year period.

Although the County intends to eventually require all system owners to obtain operation permits, it currently lacks the resources to implement this plan all at once. As part of its plan to phase-in the permit system, the County requires system owners to obtain operation permits at "times of opportunity." Under the Ordinance, operation permits are required: (1) for any new system; (2) for any system repair or expansion; (3) for any sale of property with an existing unpermitted system; and (4) for any system located in a designated Geologically Sensitive Area. Owners must also obtain permits when required by the health officer.

The Ordinance requires that applicants pay fees for each of the specified permits. The fee for a construction permit is $70 and the fee for an operation permit is $40. Renewing an expired operation permit requires payment of a $40 renewal fee. Additionally, operation permit holders are assessed an annual $30 fee for water quality monitoring.

The County uses the revenue from the operation permit fees to offset its administrative costs in issuing the permits and to fund enforcement and inspections. The County

maintains that the cost of issuing the permits exceeds the revenue from the fees. The County is currently holding all revenue from the water quality monitoring fees pending the outcome of this appeal. The County intends to use this revenue to fund ground and surface water monitoring in order to identify failing septic systems. The County also contends that the revenue from these fees is insufficient to cover the cost of its monitoring efforts.

The Association filed a lawsuit claiming that the County lacks the authority to impose the disputed fees. The Association also sued under 42 U.S.C. § 1983, claiming that the Ordinance violates various provisions of the state and federal constitutions. The trial court upheld the Ordinance and entered summary judgment of dismissal in favor of the County. The Association appeals.

## ANALYSIS

An appellate court reviews a trial court's grant of summary judgment de novo, placing itself in the position of the trial court and considering the facts in a light most favorable to the nonmoving party. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Whereas, here, the defendant is the moving party, summary judgment of dismissal is appropriate if the defendant meets its initial burden of showing the absence of any issue of material fact, and the plaintiff fails to produce evidence sufficient to establish the existence of each essential element of its claim. CR 56(e); *Buttelo v. S.A. Woods-Yates Am. Mach. Co.*, 72 Wn. App. 397, 400, 864 P.2d 948 (1993) (citing *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). In making its responsive showing, the plaintiff cannot rely upon allegations made in its pleadings, but instead must respond with affidavits setting forth specific facts showing a genuine issue for trial. CR 56(e); *Young*, 112 Wn.2d at 225-26.

### Police Power

The Association contends that the County lacks

authority to impose the disputed fees. Counties may, under their general police powers, "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." CONST. art. XI, § 11. Here, the County has direct legislative authority to regulate private sewage disposal systems. RCW 70.05.060; *Ford v. Bellingham-Whatcom County Dist. Bd. of Health*, 16 Wn. App. 709, 712, 558 P.2d 821 (1977). Counties may not, however, impose taxes under general police powers. *Covell v. City of Seattle*, 127 Wn.2d 874, 878, 905 P.2d 324 (1995). Whether the County has the authority to impose the disputed fees depends upon whether they are taxes or regulatory fees.

■■ The Supreme Court identified three factors to be considered in determining whether a charge imposed by a governmental entity is a tax or a regulatory fee: (1) whether the primary purpose is to raise revenue or to regulate; (2) whether the money collected is spent on non-regulatory purposes; and (3) "whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer." *Covell*, 127 Wn.2d at 879.

Reviewing courts may look to " 'the overall' plan of regulation" in construing the primary purpose of the challenged fee. *Margola Assoc. v. City of Seattle*, 121 Wn.2d 625, 637-38, 854 P.2d 23 (1993). Here, the Ordinance expressly provides that "these regulations are adopted for the protection of public health through the provisions of minimum requirements for the disposal of sewage, the regulation of on-site sewage disposal systems . . . ."

Resolutions of the Thurston County Board of Health further support the conclusion that the primary purpose of the ordinance fees is regulation. Resolution No. H-3-91 indicates that the permit fees are imposed to recover the costs of inspections and services related to issuing the permits. Similarly, Resolution H-5-94 indicates that the County intends to use the water quality monitoring fees to

"fund the monitoring and protection of ground and surface water from degradation in quality due to septic systems." Based upon the record before us, we hold that the disputed fees are part of the County's overall plan to regulate septic systems. *Margola*, 121 Wn.2d at 637-38.

With regard to the second factor, the County submitted evidence that it intends to use the fee revenues to cover the costs of issuing the permits and monitoring ground and surface waters for contamination from failing septic systems. The Association contends that a genuine issue of material fact remains as to whether the County has allocated fee revenue to a non-regulatory purpose. The Association points to the County's use of some fee revenue to fund its efforts to inform the general public about the hazards of failing septic systems. But the Association fails to demonstrate that the County's information program is unrelated to the regulation and supervision of septic system pollution.

With regard to the third factor, we note that a sufficient relationship exists between the burden created by septic system pollution and the fees charged. Only owners of septic systems are subject to the disputed fees. Under *Covell*, "the charge may be deemed a regulatory fee even though the charge is not individualized according to . . . the burden produced by the fee payer." *Covell*, 127 Wn.2d at 879. The County produced substantial evidence establishing a direct relationship between septic systems and ground and surface water pollution.

The Association contends that dismissal was improper because the County fails to show that the fee revenues were spent for the exclusive benefit of the fee payers. But the relationship factor set out in *Covell* is in the disjunctive and is satisfied when a relationship exists between the fee charged and the benefit to the fee payer, *or* when a relationship exists between the fee charged and the burden produced by the fee payer. *Covell*, 127 Wn.2d at 879. Because the disputed fees satisfy all of the *Covell* factors, we hold that they are regulatory fees, not unauthorized taxes. *Covell*, 127 Wn.2d at 879.

The Association also asserts that the operation permit fee creates an ultra vires excise tax. An excise tax is "a tax on the right to use or transfer things." *Whatcom County v. Taxpayers*, 66 Wn. App. 284, 294, 831 P.2d 1140 (1992). Because we hold that the disputed fees are not taxes, we decline to address this argument.

The Association next asserts that the Ordinance conflicts with RCW 70.05.060(7), which provides:

> **Powers and duties of local board of health.** Each local board of health shall have supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction and shall:
>
> . . . .
>
> (7) Establish fee schedules for issuing or renewing licenses or permits or for such other services as are authorized by the law and the rules of the state board of health: PROVIDED, That such fees for services shall not exceed the actual cost of providing any such services.

■ The Association argues that the County has not shown that the disputed fees are lawful under RCW 70.05.060. The County correctly notes that the burden of proving invalidity rests with the Association. A person challenging the validity of the enactment has the burden to show the action was improper. *Henry v. Town of Oakville*, 30 Wn. App. 240, 247, 633 P.2d 892 (1981), *review denied*, 96 Wn.2d 1027 (1982).

The County submitted evidence that the actual administrative cost of issuing an operation permit is $44.24, and that the fee for the same permit is only $40. Additionally, the County submitted evidence that the water quality monitoring fee will not generate sufficient revenue to fund the County's planned monitoring program. The Association fails to offer evidence establishing that the disputed fees are excessive. Therefore, the disputed fees are not excessive and do not violate RCW 70.05.060(7).

■ Because the disputed fees are valid regulatory fees that do not conflict with RCW 70.05.060(7), we hold that

the County has the authority to impose them under its general police powers. *Covell*, 127 Wn.2d at 878-79.

## Constitutional Challenges

■ The Association further contends that the Ordinance violates several provisions of the state and federal constitutions. Regularly enacted ordinances are presumed constitutional. *Homes Unlimited, Inc. v. City of Seattle*, 90 Wn.2d 154, 158, 579 P.2d 1331 (1978). The challenger bears the heavy burden of proving that the ordinance is unconstitutional beyond a reasonable doubt. *Erickson & Assoc., Inc. v. McLerran*, 123 Wn.2d 864, 869, 872 P.2d 1090 (1994). In doing so, the challenger must rebut the presumption that all legally necessary facts justifying the enactment exist. *Homes Unlimited*, 90 Wn.2d at 158.

### "Reasonableness"

■ The Association argues that by requiring that owners of existing septic systems obtain an operation permit before repairing their system or selling their property, the Ordinance violates "the test of reasonableness." The judicial test of reasonableness requires that regulations enacted pursuant to a municipal corporation's police powers must "be reasonably necessary to protect public health, safety, morals, and general welfare and . . . be substantially related to the legitimate ends sought." *Homes Unlimited*, 90 Wn.2d at 158. A reviewing court may not strike down legislation unless it is shown to be clearly unreasonable or arbitrary and capricious. *Homes Unlimited*, 90 Wn.2d at 159.

A review of the record discloses that the Ordinance is reasonably related to protecting health and safety of County residents. The Association fails to offer evidence that the County acted in a clearly unreasonable, arbitrary or capricious manner. Accordingly, we hold that the

Ordinance does not violate the judicial test of reasonableness.

### "Vested Rights Doctrine"

The Association asserts that construction permits give owners a "vested right" to install and operate their septic systems. The Association argues that by requiring owners to obtain an operation permit to use their system, the Ordinance violates the vested rights doctrine. Under the vested rights doctrine, developers are entitled to have a land development proposal processed under the regulations in effect at the time a complete building permit application is submitted, regardless of subsequent changes in zoning or other land use regulations. *Erickson*, 123 Wn.2d at 868. The doctrine applies to septic tank installations. *Ford*, 16 Wn. App. at 715.

The Association's argument is based upon the premise that a construction permit alone gives owners the right to operate their septic systems.[1] A construction permit alone does not allow an owner to use the system. Instead, the Ordinance 10.6 requires an owner to obtain an operation permit *before* issuance of a construction permit. Because a construction permit alone does not au-

---

[1] In concluding that a construction permit authorizes using the system, the Association relies exclusively on the County's answer to the following interrogatory:

INTERROGATORY NO 9: Please state whether an Operational permit is required irrespective of whether the on-site sewage disposal system is initially operated during the year in which the permit is obtained and the fees are paid. In other words, to construct a sewage disposal system, must a property owner obtain an Operational permit prior to constructing an on-site sewage disposal system, even if the system is not actually operated in that year.

The County provided the following answer:

ANSWER TO INTERROGATORY NO. 9: Yes, because issuance of a building site approval and construction permit authorizes the construction and use of an on-site system. It would be unreasonably costly for the County to monitor when and whether a system is actually in use in order to require an operational permit only at such times. This would not serve the public interest and would generate high costs which would ultimately be passed on to fee payers.

thorize the use of a septic system, requiring an operation permit does not deprive owners of a vested right.

### Search and Seizure

██ The Association contends that the system inspections required under the Ordinance constitute warrantless searches which violate the Fourth Amendment and CONST. art. I, § 7. Inspections for health, safety, and other violations of municipal codes must be conducted pursuant to a warrant, or fall within one of the narrowly drawn exceptions to the warrant requirement. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). Warrants for health and safety inspections require a showing of probable cause. *City of Seattle v. McCready*, 123 Wn.2d 260, 273, 868 P.2d 134 (1994) (*McCready* I). Voluntary consent, however, obviates the need for a warrant. *City of Seattle v. McCready*, 124 Wn.2d 300, 303-304, 877 P.2d 686 (1994) (*McCready* II).

Under the Ordinance, the County first attempts to obtain the permission of the land owner for every septic tank inspection. If permission is refused, the County is required to obtain a warrant to legally inspect the system. Nothing in the Ordinance purports to authorize warrantless searches in the absence of consent.

██ The Association argues that the County can never obtain voluntary consent because the mere threat to obtain a search warrant is sufficiently coercive to vitiate voluntary consent. For this proposition it relies upon *State v. Apodaca*, 67 Wn. App. 736, 739-40, 839 P.2d 352 (1992), *overruled on other grounds by State v. Mierz*, 127 Wn.2d 460, 901 P.2d 286 (1995). The Association's reliance upon *Apodaca* is misplaced. Although threats to obtain a search warrant may invalidate consent when grounds for obtaining a warrant do not exist, whether consent is coerced is a question of fact determined from the totality of the circumstances. *Apodaca*, 67 Wn. App. at 739-40.

The Association fails to demonstrate that the Ordinance authorizes unconstitutional inspections. Because we hold

that the Ordinance does not authorize unconstitutional searches, we decline to address the Association's argument that the related inspection fee is ultra vires.

## Due Process

The Association contends that the Ordinance violates due process because: (1) requiring owners to obtain operation permits in order to use their systems violates the vested rights doctrine; and (2) the County uses water quality monitoring fee revenue for expenses incurred in monitoring citizens not subject to the fees. Because we hold that the Ordinance does not violate the vested rights doctrine, we decline to address the first argument.

The Association asserts that because the County does not restrict its use of fee revenue to programs that benefit fee payers exclusively, the County violates the fee payer's due process rights. Due process limits a state's power to collect fees to "collection of those funds necessary for regulatory and supervisory purposes." *State ex rel. Burlington N., Inc. v. Washington Utils. & Transp. Comm'n*, 93 Wn.2d 398, 406, 609 P.2d 1375 (1980) (citing *Great N. Ry. Co. v. Washington*, 300 U.S. 154, 57 S. Ct. 397, 81 L. Ed. 573 (1937)). As we noted in our discussion of the police power issue, the Association fails to offer any evidence that the County spent fee revenue on a purpose unrelated to the regulation and supervision of septic tank pollution, or that the revenue collected grossly exceeds the cost of the County's regulatory program. Accordingly, we hold that County's use of fee revenues does not violate due process. *Washington Utils. & Transp. Comm'n*, 93 Wn.2d at 406.

## Equal Protection

The Association contends that the Ordinance violates equal protection because it fails to treat all septic system owners in the same manner. Recent Washington cases have held that CONST. art. I, § 12 provides no more

protection than the Fourteenth Amendment. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993); *State v. Entz*, 58 Wn. App. 112, 119-20, 791 P.2d 269, *review denied*, 115 Wn.2d 1019 (1990).

The first step in equal protection analysis is to determine the standard of review. *Harris v. State Dept. of Labor & Indus.*, 120 Wn.2d 461, 476, 843 P.2d 1056 (1993). The Association asserts that the Ordinance infringes a fundamental right and should be analyzed under the strict scrutiny standard. First, the Association claims the Ordinance infringes their right to privacy under CONST. art. I, § 7. Second, the Association claims that the Ordinance violates their vested rights to use of the property. Finally, the Association asserts that the Ordinance infringes their right to sell property. As noted above, we hold that the Ordinance violates neither CONST. art. I, § 7 nor the vested rights doctrine. Similarly, we reject the Association's argument that the Ordinance infringes upon their right to sell their property.

Generally, the rational basis or minimal scrutiny test applies to zoning, planning, and building regulations. *See e.g., Convention Ctr. Coalition v. City of Seattle*, 107 Wn.2d 370, 378, 730 P.2d 636 (1986). Because the Association fails to demonstrate that the Ordinance infringes a fundamental right, we apply the rational basis test here. Under the rational basis test, the court must determine: "(1) whether the legislation applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legislation." *Convention Ctr.*, 107 Wn.2d at 378-79.

The Association argues that because the Ordinance does not require all septic system owners to obtain operation permits, the first prong is not satisfied. In making its argument, the Association confuses the classifications at issue. In order to phase in the permit system, the Ordinance divides system owners into five classes: those building new

systems; those selling property with existing unpermitted systems; those repairing unpermitted systems; those with systems located in a designated Geologically Sensitive Area; and those with failing systems identified through the County's water quality monitoring efforts. All system owners who fall under one of these five classifications are required to obtain operation permits. Because all members of each class are treated equally within their respective classes, we find that the first prong of the rational basis test is satisfied. *Jeffery v. McCullough*, 97 Wn.2d 893, 897, 652 P.2d 9 (1982).

With regard to the second prong, a classification that is "neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, [does not deny] equal protection of the law." *Forbes v. City of Seattle*, 113 Wn.2d 929, 944, 785 P.2d 431 (1990) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959)). The Association fails to offer any evidence that the second set of classifications are upon unreasonable or untenable grounds.

Further, we find that reasonable grounds exist for distinguishing between those within and without the disputed classes. First, the disputed classes are clearly defined and owners who fall under one of the classifications are easily identified. Second, the triggering events that will cause an owner to fall under one of the classifications (e.g. repair) occur at regular enough intervals to ensure gradual implementation of the permit system. We find that the Ordinance satisfies the second prong of the rational basis test. *Convention Ctr.*, 107 Wn.2d at 379.

With regard to the third prong, a classification must be "purely arbitrary" to overcome the strong presumption of constitutionality. *State v. Smith*, 117 Wn.2d 263, 279, 814 P.2d 652 (1991). The disputed classifications are rationally related to the County's stated goal of phasing in the permit system. An appellate court may not substitute its judgment for that of a legislative body with respect to the wisdom and necessity of a regula-

tion. *Homes Unlimited*, 90 Wn.2d at 158. Because we cannot say that the classifications bear no rational relationship to phasing in the permit system, we hold that the Ordinance does not violate equal protection.

### Attorney Fees

The County contends that it is entitled to attorney fees for the time it spent responding to this claim. A defendant to an action brought under 42 U.S.C. § 1983 may recover its attorney fees when the action is "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980). Because the Association's arguments have arguable merit, we decline to award the County its costs.

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review denied at 132 Wn.2d 1010 (1997).